UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Timothy A. Donahue,      Case No. 3:22-cv-2179

    Plaintiff,

v.      MEMORANDUM OPINION
AND ORDER

Carl Gutman, *et al.*,

    Defendants.

## I. INTRODUCTION

Two of the three named defendants in this case, Carl Gutman and Eric Mentis, have filed a motion to dismiss the claims alleged by Plaintiff Timothy A. Donahue. (Doc. No. 10). Donahue opposed the motions and moved, in the alternative, for the motion to dismiss to be treated as a motion for summary judgment and remain pending until after discovery is complete. (Doc. No. 13). Gutman and Mentis filed a brief in reply. (Doc. No. 14).

Separately, the third defendant in this case, Dan Kautz, filed a motion for judgment on the pleadings. (Doc. No. 15). Donahue filed a brief in opposition, (Doc. No. 16), and Kautz filed a reply. (Doc. No. 17).

For the reasons stated below, I grant both motions in part and deny them in part. I also deny Donahue's motion in the alternative as moot.

## II. BACKGROUND

On December 4, 2020, Donahue was transporting materials via an open trailer hitched to his truck when he was pulled over by Ohio State Highway Patrolman Gutman. (Doc. No. 7 at 3).

During the traffic stop, Gutman asked Donahue to submit to a breathalyzer test and placed Donahue under arrest when he refused. (*Id.* at 4). Donahue asserts Erie County Sheriff's Deputy Kautz then arrived and assisted Gutman in placing him under arrest. (*Id.*).

When the officers placed Donahue in the back of a police vehicle, Donahue allegedly voiced concern over the officers' placement of his handcuffed hands behind his back, informing them that he had recently undergone surgery on his left wrist and that the handcuffs were causing significant pain. (*Id.*). He contends the officers told him to keep his wrists straight, but he could not do so because of the metal hardware inserted into his wrist during the surgery. (*Id.*). Donahue asserts the officers did nothing to accommodate his condition, instead keeping him in the back of the police cruiser where he sat in "obvious excruciating pain." (*Id.* at 5). When the officers opened the door to talk to him again, Donahue requested they loosen the handcuffs because he was in pain, but the officers refused. (*Id.*). Donahue asserts that Gutman told him he was likely in pain because of the design of the back of the service vehicle, and that Kautz told him he was in pain because of his "large stature." (*Id.*).

When Defendants told Donahue he would be driven to a State Trooper post and would need his seatbelt buckled, he asked if his hands could be re-cuffed in front of him. (*Id.*). "Defendants" denied this request. (*Id.*). Shortly thereafter, Donahue allegedly told the officers he was losing feeling in his fingers. (*Id.*). He again asserts the officers did nothing to address Donahue's pain or explain to him why the cuffs could not be loosened or re-cuffed in front of him. (*Id.* at 6). Donahue says he was cuffed in this manner for over thirty minutes. (*Id.*) Throughout his encounter with the officers, Donahue alleges he complied quickly and peacefully with commands. (*Id.* at 4, 6). He was not violent and did not attempt to resist arrest. (*Id.*).

On December 14, 2020, when Donahue sought medical treatment in the emergency room of Fisher-Titus Medical Center in Norwalk, Ohio, the attending physician noted that the markings on

2

Donahue's wrist from the handcuffs were still visible ten days after his arrest. (*Id.* at 7). Further diagnostic examination revealed Donahue had bilateral nerve compression in his wrists, causing extreme pain in his hands and loss of feeling in his fingers. (*Id.*). Donahue contends he has lost all functionality in his hands—including the ability to feel when his hands are cut and the ability to hold objects without dropping them—and has been unable to sleep because of the constant pain. (*Id.*).

Donahue filed suit in this court on December 2, 2022. (Doc. No. 1). He later filed an amended complaint. (Doc. No. 7). Donahue asserts four distinct claims against the officers: (1) a § 1983 claim against for violating Donahue's Fourth Amendment right to be free from unreasonable seizures, (2) a claim under Title II of the Americans with Disabilities Act ("ADA") for failure to provide a reasonable accommodation, (3) a claim under Section 504 of the Rehabilitation Act, and (4) a claim under the Equal Protection Clause of the Fourteenth Amendment. (*See id.* at 7, 9, 12, 13).

### III.  STANDARD

A defendant may seek to dismiss a plaintiff's complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted); *see also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir 2008). The defendant bears "the burden of

showing that the plaintiff has failed to state a claim for relief." *Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (internal citation and quotation marks omitted). Motions for judgment on the pleadings filed under Rule 12(c) of the Federal Rules of Civil Procedure are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). As relevant here, in the qualified immunity context, courts have considered video footage introduced by a defendant at the Rule 12 stage when that footage "utterly discredits" the allegations in a plaintiff's complaint. *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## IV. ANALYSIS

### A. ADA AND REHABILITATION ACT CLAIMS

The Defendants argue that Donahue's ADA and Rehabilitation Act claims should be dismissed because Donahue has sued the defendants only in their individual capacities, and there is no individual liability under Title II of the ADA or Section 504 of the Rehabilitation Act. (Doc. No. 10 at 14, Doc. No. 15 at 10). Donahue did not respond to this argument. (*See* Doc. No. 13; Doc. No. 16). "Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity." *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009); *see* 42 U.S.C. § 12132 (banning discrimination with respect to the "services, programs or activities of a public entity"). Likewise, "the Rehabilitation Act does not impose personal liability upon individuals." *Sedore v. Wyckoff*, Case No. 2:21-12935, 2022 WL 141526 at *2 (E.D. Mich. Jan. 14, 2022) (citing *Hiler v. Brown*, 177 F.2d 542, 546 (6th Cir. 1999)); *see* 29 U.S.C. § 794(a) (banning disability discrimination

4

"under any program or activity receiving Federal financial assistance"). Accordingly, I dismiss Donahue's ADA and Rehabilitation Act claims.

### B.     EQUAL PROTECTION

In Count Four, Donahue alleges "Defendants" violated his Fourteenth Amendment equal protection rights "by impermissibly discriminating against him on the basis of his disability." (Doc. No. 7 at 13).

Kautz argues Donahue's Fourteenth Amendment Equal Protection Clause claim should be dismissed because the amended complaint "fail[s] to allege that Plaintiff was treated differently compared to any other similarly situated person." (Doc. No. 15 at 8). Donahue did not respond to this argument. (*See* Doc. No. 16). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006)). Donahue's amended complaint does not allege he was treated differently than any similarly situated individuals. (*See* Doc. No. 7 at 13).

Nor has Donahue alleged any facts identifying what each Defendant did to violate his equal protection rights. *See, e.g., Childress v. City of Cincinnati, Ohio*, 765 F. Supp. 3d 662, 689 (S.D. Ohio 2025) ("[F]or a plaintiff who alleges unconstitutional conduct by multiple defendants to pass the *Iqbal/Twombly* hurdle, the plaintiff must identify "with particularity" what *each* defendant allegedly did in connection with that unconstitutional conduct.") (citing *Moore v. Whitmer*, No. 21-175, 2022 WL 1886075, at *2 (6th Cir. Aug. 12, 2022)) (emphasis in original). Donahue fails to state a plausible Equal Protection claim because he alleges only that "Defendants" violated his rights, without identifying which of the three Defendants acted with a discriminatory intent.

Gutman and Mentis also moved to dismiss Donahue's Fourteenth Amendment claim, though they erroneously identified it as a due process clause violation rather than an equal protection claim. (Doc. No. 10 at 13-14). Donahue did not respond to this argument, either. (*See* Doc. No. 13). As I discussed above, the First Amended Complaint on its face does not allege a plausible Equal Protection claim. Therefore, and because Donahue was on notice Gutman and Mentis sought to challenge this claim and chose not to respond, I grant the motion to dismiss this claim.

In sum, I dismiss Donahue's Fourteenth Amendment Equal Protection Clause claim as to Gutman and Mentis, and I grant judgment on the pleadings in Kautz's favor.

C. **EXCESSIVE FORCE**

Defendants argue they are entitled to qualified immunity on Donahue's Fourth Amendment claim of excessively tight handcuffing. In support of their motions, they urge me to consider video footage from inside Trooper Gutman's police vehicle. This footage was not attached to or referenced in any pleading.[1] Instead, Trooper Gutman and Trooper Mentis attached it as an exhibit to their motion to dismiss. (*See* Doc. No. 11; Doc. No. 12).[2]

---

[1] Gutman and Mentis state in passing that the complaint "cites to direct quotes from the dash cam video," suggesting Donahue has incorporated the video into his complaint by reference. (Doc. No. 10 at 5); *see Gavitt*, 835 F.3d at 640 (explaining that a court may consider, at the Rule 12 stage, certain documents "referred to in the complaint" and "central to the claims contained therein"). But Donahue does not mention the dash-cam footage anywhere in his complaint. And Gutman and Mentis do not explain why the quoted statements—all allegedly said to Donahue—could not have come from Donahue's recollection of this incident. (*See id.*). Further, the video footage is not referenced in, or attached to, Kautz's Answer. (*See* Doc. No. 9). The video footage is not part of the pleadings.

[2] Because the footage was too large to be filed electronically through the CM/ECF docketing system, Gutman and Mentis filed it manually. (Doc. No. 11).

6

1.     **Considering the Video Footage**

Ordinarily, a court may not consider matters outside the pleadings when deciding a motion under the Rule 12(b)(6) standard without converting it into a motion for summary judgment. Fed. R. Civ. P. 12(d); *see Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). When a court converts a motion to dismiss into a motion for summary judgment, "all parties must be given a reasonable opportunity to present all material pertinent to the motion," which typically requires discovery. *Gavitt*, 835 F.3d at 640; *see Tucker v. Union of Needletrades, Indus. and Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) ("a motion for summary judgment may not be granted until a plaintiff has had an opportunity for discovery").

The Sixth Circuit has considered video footage in qualified immunity cases at this stage without converting a Rule 12 motion into a motion for summary judgment. *See Bell v. City. of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022); *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386-87 (6th Cir. 2017). But this review is "limited:" a court can "rely on the videos over the complaint to the degree the videos are clear and 'blatantly contradict[ ]' or 'utterly discredit[ ]' the plaintiff's version of events.'" *Bell*, 37 F.4th at 364 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Bailey*, 860 F.3d at 386-87 (considering video footage offered by the defendants where it contradicted the allegations in the complaint "[f]rom the first frame to the last").

Otherwise, the complaint controls. *See Bell*, 37 F.4th at 366 (explaining that "where the video evidence is inconclusive," the court must "rely only on the facts in the complaint"); *see also Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011) ("'Even if part of Coble's testimony is blatantly contradicted by the audio recording, that does not permit the district court to discredit his entire version of the events.'"); *Pierce v. Bailey*, No. 1:22-cv-863, 2023 WL 4936812 at *6 (W.D. Mich. July 10, 2023) (declining to rely on video footage outside the pleadings in a qualified

7

immunity case at the motion to dismiss stage because the videos "d[id] not conclusively resolve the factual issues in this case").

### 2. Qualified Immunity

A government official performing a discretionary function is immune from a civil suit for money damages if the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity claims should be resolved "at the earliest possible point in the litigation." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019). But because "development of the factual record is frequently necessary to decide whether [an] official's actions violated clearly established law," the Sixth Circuit has "repeatedly cautioned" that it is "perilous" to dismiss a case on qualified immunity grounds prior to discovery. *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020) (citing cases); *see also Novak*, 932 F.3d at 427 (denying qualified immunity because "resolving [the two] issues involves questions of fact").

When a defendant asserts qualified immunity, a court must determine: (1) whether the plaintiff has shown the defendant's actions violated the plaintiff's constitutional rights; and (2) whether the constitutional right at issue in the case was "clearly established" at the time the defendant acted. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (internal quotation marks omitted). A court can consider these questions in either order. *Colson v. City of Alcoa*, 37 F.4th 1182, 1189 (6th Cir. 2022) (citing *Pearson*, 555 U.S. at 236).

Section 1983 provides for civil liability for individuals who, while acting under color of state law, deprive a plaintiff of that individual's constitutional or federal statutory rights. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must plausibly allege (1) a deprivation of a right, privilege, or immunity under the United States Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Harbin–Bey v. Rutter*, 420 F.3d

8

571, 575 (6th Cir. 2005). The defendants do not contest that they acted under color of state law. (*See* Doc. No. 10 at 4, Doc. No. 15 at 5-6).

The Fourth Amendment's guarantee of freedom from unreasonable seizures includes the right to be free from "unduly tight or excessively forceful handcuffing during" an arrest. *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009). *See also Courtright v. City of Battle Creek*, 839 F.3d 513, 518-19 (6th Cir. 2016) (citing *Baynes v. Cleland*, 799 F.3d 600, 613-14 (6th Cir. 2015)). This right is clearly established. *See, e.g., Getz v. Swoap*, 833 F.3d 646, 654 (6th Cir. 2016); *Morrison*, 583 F.3d at 401; *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005) (citing *Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997)). In the Sixth Circuit, a plaintiff must establish three elements to prove an excessively tight handcuffing claim: "(1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Baynes*, 799 F.3d at 608 (internal citations omitted).[3]

A plaintiff can satisfy this first prong by alleging they verbally communicated to an officer that the handcuffs were too tight and were causing pain. *See Rudolph v. Babinec*, 939 F.3d 742, 751 (6th Cir. 2019). Here, Donahue alleges he verbally communicated to all three defendants that the handcuffs were too tight and were causing him pain.

First, when Gutman and Kautz placed Donahue in the service vehicle shortly after handcuffing him, Donahue contends he "voiced his concern about the placement of his handcuffed

---

[3] Kautz characterizes Donahue's Fourth Amendment claim against him as "not that he applied excessive force to Plaintiff but that he failed to intervene to stop it." (Doc. No. 15 at 6). As a result, Kautz argues, the line of Sixth Circuit cases dealing with an officer's failure to intervene, rather than the precedent governing excessively-tight handcuffing, applies. *Id.* This argument is unpersuasive for two reasons. First, the amended complaint states, "Defendant Kautz arrived and assisted Defendant Gutman in placing Plaintiff under arrest," so Donahue has plausibly alleged that Kautz participated in the initial handcuffing that Donahue pinpoints as the source of his injury. (Doc. No. 7 at 4). And the video footage does not show the moment Donahue is handcuffed, so it does not utterly discredit this allegation. Second, the Sixth Circuit has applied its excessively tight handcuffing jurisprudence to claims against officers who did not participate in an initial handcuffing but heard and ignored an arrestee's complaints. *See, e.g., Baynes,* 799 F.3d at 608-09.

9

hands behind his back." (Doc. No. 7 at 4). He then says he "informed Defendants that he just had surgery on his left wrist and the handcuffs were causing him an intense amount of pain." (*Id.*). When the officers opened the car door to speak with him, "Plaintiff requested that Defendants loosen the handcuffs because he was in an extreme amount of pain." (*Id.* at 5). Then, after Donahue requested he be re-cuffed with his hands in front of him, "Plaintiff told Defendants that he was losing feeling in fingers because the handcuffs were too tight." (*Id.* at 6). In addition, "Defendant Mentis arrived at the scene approximately twenty minutes after Plaintiff was handcuffed" and "heard Plaintiff's complaints regarding the handcuffs." (*Id.*). The allegations in the amended complaint satisfy this first prong.

Defendants contend the video footage utterly discredits these assertions. (*See* Doc. No. 10 at 6-7; Doc. No. 14 at 3-4; Doc. No. 15 at 7; Doc. No. 17 at 5). But, at this stage of the proceedings, a "lack of corroborating sound on the audio recording" does not discredit Donahue's allegations. *Coble*, 634 F.3d at 869-70. And Gutman and Mentis concede Donahue informed at least one of the officers that he recently had surgery on his wrist and asked that the handcuffs be removed. (*See* Doc. No. 10 at 7). The Sixth Circuit has noted that asking for handcuffs to be removed or loosened can itself create "an implication that the cuffs were too tight." *Hughey v. Easlick*, 3 F.4th 283, 290 (6th Cir. 2021) (citing *Baynes*, 799 F.3 at 608). When viewed as a whole, "the video evidence is inconclusive" as to which officers heard Donahue's statements and how they might have reasonably interpreted those statements in light of Donahue's behavior and what they knew about him. *Bell*, 37 F.4th at 366. The footage does not "utterly discredit" Donahue's allegations as to this prong.

A plaintiff may satisfy the second prong by alleging an officer responded dismissively to a complaint or rejected a complaint entirely. *See Baynes*, 799 F.3d at 609; *Morrison*, 583 F.3d at 402. While "conduct, not time, is the measurement of a violation," an officer's alleged failure to meaningfully respond to a complaint for over thirty minutes could establish the officer may have

10

ignored it. *Rudolph*, 939 F.3d at 751; *see also Martin*, 106 F.3d at 1310 (6th Cir. 1997) (plaintiff endured excessively tight handcuffs for 35 minutes).

Here, Donahue alleges Gutman and Kautz responded dismissively to his requests and that Mentis ignored him entirely. Donahue alleges one of the officers told him to "keep [his] wrists straight" after being explicitly told that Donahue had recently undergone wrist surgery. (Doc. No. 7 at 4); *cf. Baynes*, 799 at 609 (denying summary judgment in an excessively-tight handcuffing claim where the officer "replied to [the plaintiff's] complaints by telling [him] that the handcuffs were not too tight").

Donahue then says he "requested that Defendants loosen the handcuffs because he was in an extreme amount of pain," but the officers refused. (Doc. No. 7 at 5). Donahue alleges Gutman and Kautz acknowledged he was likely in pain but still refused to loosen or remove the handcuffs. (*Id.*). Donahue further contends Mentis heard his complaints regarding the handcuffs and did nothing in response. (*Id.* at 6). Donahue also alleges he was cuffed for "well over half an hour." (*Id.*). Drawing reasonable inferences in Donahue's favor, he has alleged that all three defendants rebuffed his requests and left him cuffed for over thirty minutes, so he has satisfied his pleading requirement for this prong as well.

Defendants argue the video footage utterly discredits Donahue's allegations as to the second prong as well, because it shows that the officers checked his handcuffs and repositioned him to ease pressure on his hands. (*See* Doc. No. 10 at 7-9; Doc. No. 14 at 4-5; Doc. No. 17 at 4-5). On this score, the videos depict a more complicated set of circumstances than those the amended complaint describes. But the video footage does not utterly discredit the material allegations in the amended complaint.

Most notably, while the video appears to contain at least two instances where an officer does *something* in response to Donahue's requests that his cuffs be loosened, neither the officer nor

11

Donahue is visible and the audio does not clearly disclose what, if any, changes were made. Thus, the recording does not allow for the resolution of the "factual dispute between the parties" over what the officers did in response to Donahue's requests. *Bell*, 37 F.4th at 364. *See also Morrison*, 583 F.3d at 402 (declining to grant summary judgment where there was conflicting testimony over how an officer responded to the plaintiff's request that her handcuffs be loosened).

Finally, "[t]he extent of the physical injury suffered by the plaintiff need not be severe" to sustain an excessively tight handcuffing claim. *Courtright*, 839 F.3d at 519. At the motion to dismiss stage, where a plaintiff has alleged he had a medical condition or prior surgeries, it is enough for a plaintiff to allege "that he suffered from pain after he was handcuffed behind his back." *Id.* at 520. In these circumstances, a plaintiff need not even allege "he continued to suffer injury after his handcuffs [were] removed." *Id.*

Here, Donahue has alleged more: he says he could not straighten his wrists because of a recent surgery and that, as a result, his handcuffing caused him to "los[e] all functionality in his hands," leaving him in "constant pain." (Doc. No. 7 at 4, 7). Defendants do not argue that Donahue failed to plausibly allege a sufficient injury.

I conclude Donahue has pled a plausible claim of excessively tight handcuffing in violation of the Fourth Amendment.

## V. CONCLUSION

For the reasons stated above, I grant Gutman and Mentis' motion to dismiss as to Counts Two, Three, and Four and deny it as to Count One. (Doc. No. 10). I also grant Kautz's motion for judgment on the pleadings as to Counts Two, Three, and Four and deny it as to Count One. (Doc. No. 15). I deny Donahue's motion to convert the motions as moot. (*See* Doc. No. 13).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
